APPEAL OF ERWIN & WASEY.

Docket No. 393. Submitted June 26, 1925. Decided November 6, 1925.

*Elias Mayer* and *Ezra Cohen, Esqs.*, for the taxpayer.
*J. Arthur Adams, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the calendar year 1918, in the amount of $1,028.17, arising from the denial by the Commissioner of taxpayer's claim that it was a personal-service corporation.

FINDINGS OF FACT.

The taxpayer is an Illinois corporation with principal office at Chicago, engaged in business as an advertising agency. The company was organized in 1914, under the name of Wasey & Jefferson Co., by Louis R. Wasey and W. T. Jefferson, who, for many years prior to that time, had been employed by another advertising agency. The original capital stock was $25,000, divided into 250 shares of the par value of $100 each, and was held equally by Wasey and Jefferson. On November 11, 1914, the capital stock was increased to $50,000. On February 8, 1915, Charles R. Erwin, for many years employed by another advertising company, purchased 125 shares of the stock of the taxpayer and became its president. The name of the company was thereupon changed to Erwin, Wasey & Jefferson. On September 25, 1915, the name of the company was again changed to Erwin & Wasey. On February 16, 1916, the capital stock was increased to $100,000, and on May 8, 1917, to $103,000. The capital stock outstanding during the taxable year 1918 was owned as follows: C. R. Erwin, 545 shares; L. R. Wasey, 355 shares; G. P. Wood, 50 shares; A. H. Kubner, 50 shares; C. M. Langan, 25 shares; H. M. Bourne, 5 shares; total, 1,030 shares. The minority stockholders were certain employees to whom stock had been issued under a written agreement which provided for payment therefor out of dividends.

The stockholders throughout the taxable year were regularly and actively engaged in the affairs of, and devoted their entire time to, the business of the corporation.

All of the accounts of advertisers were procured by Erwin and Wasey, the principal stockholders. Upon the receipt of an advertising account, either Erwin or Wasey, or both together, would make a study and a detailed analysis of the advertiser's business, its potentialities, present and past market, and competition, to determine upon the advisability and the probable success of an advertising campaign. Upon the completion of the investigation and analysis, specimen advertising was prepared and submitted to the advertiser, and upon acceptance it was prepared in final form and placed with the publications acceptable to the advertiser after a conference with Erwin and Wasey. Advertising space was reserved by the taxpayer in the name of the advertiser and could not be transferred to any other advertiser or used by taxpayer in any manner other than to insert therein the advertisement of the specified advertiser. All contracts with publishers were made in the name of the taxpayer. The publisher looked to the taxpayer for payment for all advertising and no bills were rendered by the publisher to the advertiser. Upon acceptance by the client of a specific advertisement, taxpayer procured proper plates, which, together with an order for the appearance of the advertisement, were sent to the publications.

All space contracted for in magazines, mail-order, agricultural, and religious publications was billed to the client by the taxpayer at publishers' regular rates; and publishers' cash discounts allowed the taxpayer on the net cost to it were allowed the advertiser when invoices rendered were paid as specified therein.

All space contracted for in trade, class, and medical publications was billed to the advertiser at the net cost to the taxpayer plus 15 per cent service charge, and publishers' cash discounts on the net cost to taxpayer were allowed when invoices rendered were paid as specified therein. All space contracted for in newspapers was billed to the advertiser at net cost to taxpayer plus 15 per cent service charge, and 1 per cent cash discount on the net cost to taxpayer was allowed when invoices rendered were paid as therein specified.

When the net cost of space used in newspapers ran less than 15 cents per inch, taxpayer's service charge was 25 per cent and no cash discount was allowed.

All bulletin and poster showings contracted for through taxpayer were billed to the client at regular bulletin and poster rates.

Should the client not use the total space which he had authorized taxpayer to contract for with publishers, thus causing a higher rate than he had been billed, the taxpayer billed said client with the dif-

ference between the rate contracted for and the rate earned on space used.

All illustrations, typesetting, printing, lithographing, engraving, electros, matrices, stereotypes, or other mechanical work were billed to the advertiser at cost to taxpayer plus 15 per cent service charge. All mail and express charges in forwarding plates and matrices to publications were billed to the advertiser at actual cost.

For all space used taxpayer rendered bills monthly, such bills being subject to prompt cash payment as indicated upon invoices. Material bills were rendered throughout the month as the different operations were completed, and were subject to payment within 15 days from date without discount. It was a part of the taxpayer's policy to give the advertiser free access to any records or entries that in any way might properly concern him. Every book, bill, paper, or order in taxpayer's office which pertained to the advertiser's business was subject to his inspection at any time.

Advertisers were required to pay the taxpayer for space used before the taxpayer was required to pay the publisher.

The departments of the taxpayer's business and the number of employees therein were as follows:

| Department | Number of employees | Department | Number of employees |
|---|---|---|---|
| Art | 4 | Stenographic | 19 |
| Copy | 15 | Billing | 9 |
| Service | 5 | Checking | 28 |
| Service detail | 16 | Shipping | 32 |
| Rate | 6 | Miscellaneous | 11 |
| Production | 10 | Executive | 3 |
| Replacing | 4 | | |

Salaries in excess of $5,000 paid to employees during the year were as follows:

| | |
|---|---|
| C. R. Erwin, president and treasurer | $40,000.00 |
| John H. Dunham, vice president | 14,000.00 |
| L. R. Wasey, secretary and first vice president | 28,000.00 |
| G. P. Wood, vice president | 13,000.00 |
| D. E. Brundage, copy writer | 10,099.84 |
| A. H. Kubner, copy writer | 8,450.00 |
| L. R. Maxwell, assistant | 8,708.32 |
| Myron C. Perley, head, art department | 10,057.53 |
| W. O. Millinger, space buyer | 8,200.00 |
| Garnet Warren, copy writer | 7,800.00 |
| C. W. Jones, service man | 5,700.00 |
| Walter Buchen, copy writer | 5,649.92 |
| H. M. Bourne, copy writer | 7,537.50 |
| C. M. Langan, head, copy department | 5,299.92 |

The balance sheets at the beginning and the end of the year 1918 were as follows:

*January 1, 1918.*

### ASSETS.

| | | |
|---|---:|---:|
| Cash | | $29, 274.07 |
| Accounts receivable | | 153, 573.83 |
| Bills receivable | | 4, 000.00 |
| Bills receivable (capital stock) | | 11, 700.00 |
| Furniture and fixtures | $11, 296.67 | |
| Depreciation reserve | 3, 389.00 | |
| | | 7, 907.67 |
| Total | | $206, 455.57 |

### LIABILITIES.

| | |
|---|---:|
| Accounts payable | $53, 451.76 |
| Reserve for doubtful accounts | 2, 904.93 |
| Capital stock | 103, 000.00 |
| Surplus | 47, 098.88 |
| Total | 206, 455.57 |

*December 31, 1918.*

### ASSETS.

| | | |
|---|---:|---:|
| Cash | | $78, 984.52 |
| Accounts receivable | | 93, 517.98 |
| Bills receivable | | 772.00 |
| Bills receivable (capital stock) | | 3, 300.00 |
| Furniture and fixtures | $12, 522.30 | |
| Depreciation reserve | 4, 579.95 | |
| | | 7, 942.35 |
| Liberty bonds: | | |
| Third loan | | 8, 000.00 |
| Fourth loan | | 17, 522.00 |
| Total | | $210, 038.85 |

### LIABILITIES.

| | |
|---|---:|
| Accounts payable | $99, 792.45 |
| Reserve for doubtful accounts | 2, 654.93 |
| Capital stock | 95, 500.00 |
| Surplus | 12, 091.47 |
| Total | 210, 038.85 |

The gross income and deductions shown in the return filed for the year 1918 were as follows:

| | |
|---|---:|
| Gross income from operations | $394, 344.23 |
| Interest on obligations of the United States | 156.98 |
| Interest from other sources | 1, 541.92 |
| Total | $396, 043.13 |

Total gross income (brought forward) _____ $396, 043. 13

Deductions:

| | | |
|---|---|---|
| Ordinary and necessary expenses_____ | $296, 197. 94 | |
| Compensation to officers_____ | 90, 687. 50 | |
| Interest _____ | 1, 379. 35 | |
| Taxes_____ | 201. 65 | |
| Debts ascertained to be worthless and charged off _____ | 166. 65 | |
| Exhaustion, wear, and tear_____ | 1, 190. 95 | |
| | | 389, 824. 04 |

Net income shown by return_____ 6, 219. 09

The item of gross income of $394,344.23 is made up of the following items:

| | |
|---|---|
| Commission _____ | $386, 308. 63 |
| Cash discount _____ | 5, 492. 72 |
| Old paper sales_____ | 213. 24 |
| Old metal sales_____ | 72. 58 |
| Publishers' adjustments_____ | 1, 776. 06 |
| Fixtures sales_____ | 231. 00 |
| Doubtful account reserve_____ | 250. 00 |
| Total _____ | 394, 344. 23 |

The item of ordinary and necessary expenses, amounting to $296,197.94, is made up of the following items:

| | |
|---|---|
| Pay roll (except members) _____ | $191, 058. 53 |
| Department expense _____ | 4, 795. 22 |
| Donations _____ | 2, 881. 16 |
| Express_____ | 30. 94 |
| General office expense_____ | 16, 359. 15 |
| Library account_____ | 67. 30 |
| Promotion expense _____ | 2, 942. 80 |
| Postage expense_____ | 3, 258. 62 |
| Publicity_*_____ | 4, 817. 58 |
| Rent and light _____ | 17, 069. 43 |
| Special service expense _____ | 17, 331. 23 |
| Stationery and office supplies _____ | 6, 274. 43 |
| Traveling expense _____ | 26, 286. 39 |
| War service expense_____ | 2, 025. 16 |
| Total _____ | 296, 197. 94 |

The taxpayer used its capital for paying salaries, wages, rents, and general operating expenses.

Upon audit of the taxpayer's books, the Commissioner determined a net income of $11,125.41, which is accepted by the taxpayer as correct.

DECISION.

The determination of the Commissioner is approved.